IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HARRY GOSIER,<br><br>                    Plaintiff,<br><br>v.<br><br>SCOTT THOMPSON, SHAYNE MERCIER, KRISTI GEPPERT, and LOIS GREEN,<br><br>                    Defendants. | Case No. 19-cv-1199-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Harry Gosier, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitution rights pursuant to 42 U.S.C. § 1983. Gosier was allowed to proceed on a single claim alleging that Defendants denied him access to the courts by confiscating his clemency petition on two occasions.

This matter is before the Court on a motion for summary judgment filed by Defendants Scott Thompson, Shayne Mercier, Kristi Geppert, and Lois Green (Docs. 69, 70).[1] Gosier, now represented by counsel, filed a response (Doc. 89) in opposition to the motion.

---

[1] Defendants Shayne Mercier, Kristi Geppert, and Lois Green have identified themselves by their proper names. The Clerk of Court is **DIRECTED** to **CORRECT** the docket to reflect Defendants' proper names.

## BACKGROUND

On October 31, 2019, Gosier filed a *pro se* Complaint alleging that mailroom staff confiscated two pieces of legal mail related to his clemency petition (Doc. 1). Gosier was allowed to proceed on a single First and/or Fourteenth Amendment access to courts claim against Scott Thompson, Shayne Mercier, Kristi Geppert, and Lois Green for confiscating his legal mail (Doc. 10, p. 3).

In response to Gosier's Complaint, Defendants filed a motion for more definite statement (Doc. 15), seeking a more definite statement on the nature of the documents and the deadlines Gosier allegedly missed as a result of the documents being confiscated. Gosier sought leave to amend his Complaint and recruited counsel to help him draft his claims (Docs. 17 and 19). The Court recruited counsel to help Gosier draft an Amended Complaint (Doc. 22), but counsel later was allowed to withdraw at Gosier's request (Doc. 32). Gosier subsequently filed a *pro se* Amended Complaint (Doc. 34). The Amended Complaint was dismissed for failure to state a claim. Gosier was granted leave to submit a Second Amended Complaint (Docs. 44, 46), which Gosier submitted on March 1, 2022 (Doc. 49).

The Second Amended Complaint alleged that on November 16, 2018, a completed clemency petition for Gosier arrived at Pinckneyville. Defendants Thompson, Mercier, Green, and Geppert initially informed Gosier that he did not receive any mail that day but later informed Gosier that he was not allowed to receive completed petitions from outside of the prison (Doc. 59, p. 2). On March 7, 2019, another clemency petition and legal mail was confiscated by Green and Geppert (*Id.*). Because Gosier did not receive the

clemency petitions, he alleged that he missed the deadline to submit the petition for consideration.

Gosier was allowed to proceed on a single count:

Count 1: First and/or Fourteenth Amendment access to courts claim against Scott Thompson, Shayne Mercier, Kristi Geppert, and Lois Green for confiscating Gosier's clemency petition on two occasions.

(Doc. 59, p. 5).

**January 11, 2019 Grievance**

On January 11, 2019, Gosier submitted a grievance about his legal mail. The grievance indicated that the prison mailroom received copies of his clemency paperwork that needed his signature (Doc. 70-2, p. 20). Gosier planned to sign and then forward the paperwork to the governor's office for review (*Id.*). Gosier complained that someone in the mailroom sent him a form stating that he was not allowed to receive legal mail and that all legal work had to be completed in the prison library (*Id.*). In his request for relief, Gosier indicated that he wanted a set dollar amount for every day he served in prison after the date he was set to be released (*Id.*). He also asked to receive his legal work and for his release from prison (*Id.*).

Gosier marked the grievance as an emergency (*Id.*). On February 11, 2019, the Chief Administrative Officer ("CAO") expedited the grievance as an emergency (*Id.*). On February 13, 2019, the grievance officer reviewed the grievance. Grievance officer Shayne Mercier indicated that the mailroom did not have a record of the note being sent to Gosier. Mercier further noted that the mailroom does not withhold legal mail, and there was no

evidence that Gosier filed for clemency (*Id*. at p. 19). Mercier also noted that Gosier failed to provide any of the names of the officers to whom he showed the mailroom notice (*Id*.).

The CAO concurred with the determination (*Id*.). On March 9, 2019, Gosier appealed the grievance to the Administrative Review Board ("ARB"). On March 19, 2019, the ARB returned the grievance, noting that Gosier failed to identify any of the staff who informed him he could not receive legal mail. The ARB noted that they were unable to address Gosier's claims because he failed to identify the staff by name (*Id*.).

**March 22, 2019 Grievance**

On March 22, 2019, Gosier submitted a second grievance regarding the confiscation of his legal mail (Doc. 70-2, p. 12). Gosier indicated he had several copies of a legal document, but the mailroom confiscated the document and sent him a form indicating that multiple copies of the same document were not permitted (*Id*. at p. 13). Gosier noted this was the second time that the mailroom had interfered with his legal documents (*Id*. at p. 13). Gosier requested his immediate release from prison, as well as monetary compensation for the mailroom's confiscation of his legal documents.

The CAO marked the grievance as an emergency and forwarded it to the grievance officer (*Id*. at p. 12). On June 7, 2019, the grievance officer reviewed the grievance. Grievance officer Hale noted that Gosier had filed an earlier grievance regarding the receipt of his clemency paperwork (*Id*. at p. 11). The mailroom refused to deliver the paperwork and informed Gosier that he could not receive the legal work because it was not completed in the prison library (*Id*.). Similarly, Gosier was informed by a "Notification of Unauthorized Items" that the mailroom again confiscated his legal mail

because it contained duplicate copies (*Id.*). Hale spoke with the law library and was informed that there was no rule requiring all legal work to be completed in the law library and that forms and motions are often mailed to offenders (*Id.*). The grievance officer further noted that mailroom staff informed him that they had been advised that offenders could not receive duplicate copies of any document and that copies had to be made in the law library (*Id.*). Hale instructed mailroom staff that legal documents received through the mail had to be given to the offender, no matter the source, and that legal research was not required to be completed by the offender at the prison (*Id.*). The grievance officer also instructed mailroom staff that duplicate copies of legal documents should not be confiscated but delivered to the inmate (*Id.*). Ultimately, Hale affirmed Gosier's grievance because the mailroom had improperly handled his legal mail. The officer instructed Gosier to advise the sender to resend the documents previously rejected by the mailroom (*Id.*). On June 12, 2019, the CAO concurred with the decision (*Id.*).

Gosier did not mark or sign the appeal of his grievance to the ARB (*Id.* at p. 11). He did, however, attach a note dated July 11, 2019, indicating that the grievance was affirmed by the grievance officer and CAO (*Id.* at p. 14). His note also requested his freedom and a monetary award, arguing that because of the violation with his legal mail, he missed the deadline to submit his legal filing to be released (*Id.*). The ARB received the grievance on July 15, 2019 (*Id.* at p. 11). The ARB returned the grievance two days later, noting that it had been received 30 days past the date of the CAO's decision, and the appeal was untimely (*Id.* at p. 10).

**December 23, 2019 Grievance**

On October 28, 2019, Gosier again experienced issues with his legal mail. On December 23, 2019, he filed an emergency grievance (Doc. 70-2, p. 5). The grievance noted that he was pursuing a lawsuit and his release from prison. Relevant legal materials were held by the mailroom for three weeks before being delivered to Gosier. The documents also arrived opened. Gosier believed that documents were removed from his mail and, as a result, he was unable to pursue his legal claim and claim for release (*Id.*). Gosier sought his immediate release from prison and a monetary award.

Although labeled an emergency grievance, the CAO deemed the grievance not an emergency, and Gosier submitted the grievance to his counsel (*Id.* at p. 5). The counselor spoke with mailroom staff who indicated that legal mail is placed into a bag, unopened, and sent to the housing unit on the day that it is received (*Id.*). Shayne Mercier, the grievance officer, stated that he was unable to substantiate Gosier's claims (*Id.* at p. 3). Mercier further stated that Gosier failed to provide any names of the officers that brought the mail or enough information to substantiate that Gosier's legal mail was confiscated (*Id.* at p. 4). He recommended the grievance be denied. The CAO concurred with the recommendation (*Id.* at p. 3).

On March 1, 2020, Gosier appealed his grievance to the ARB (*Id.*). On September 18, 2020, the ARB denied the grievance, finding that the institution handled the grievance appropriately (*Id.* at p. 2).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir.

2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Gosier was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the

>names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director of the IDOC through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the

appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO, who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Because there are no disputes of material fact, the Court finds it unnecessary to hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

Gosier filed three grievances relevant to his claims. Gosier's first grievance, dated January 11, 2019, was denied at the institution because the claims could not be substantiated, and it was rejected by the ARB because Gosier failed to identify the names of the mailroom staff who withheld his mail. *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir.

Page 10 of 14

2011) (When an inmate fails to properly use the grievance system, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted."); 20 Ill. Admin. Code §504.810(c) (The grievance should include "what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible."). Gosier's third grievance, dated December 23, 2019, was not submitted until after he filed his initial Complaint in this case (Doc. 1). *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). *See also Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020).[2]

Although his first and third grievance do not serve to exhaust his claims, his second grievance received a favorable ruling. Gosier's March 22, 2019 grievance complained about both the previously confiscated documents and another, more recent occurrence, where his legal documents were withheld because the mail included several copies of the same document (Doc. 70-2, p. 12-13). In reviewing the grievance, the

---

[2] In *Chambers*, the Seventh Circuit reiterated that an inmate must exhaust his administrative remedies prior to filing suit, "a 'sue first, exhaust later' approach is not acceptable." *Chambers*, 956 F.3d at 984 (citing *Ford*, 362 F.3d at 398-400). But when an amended complaint raises new claims, exhaustion of those new claims may be completed after the filing of the original pleading but prior to the filing of the amended complaint. *Id.* (citing *Cannon v. Washington*, 418 F.3d 714, 717-19 (7th Cir. 2005); *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005)). An amended pleading which raises the same claims as the original complaint is not a new claim. *Id.* Like in *Chambers*, both Gosier's original pleading and his amended pleading included the same claim regarding the confiscation of his legal mail. *See Chambers*, 956 F.3d at 984-85 ("Chamber's claim against Dr. Sood is not new; it's the same claim he raised in his original *pro se* complaint, albeit against "Unknown Doctor #1."). Thus, the Second Amended Complaint did not include any new claims that would allow Gosier an exception to the rule requiring an inmate to exhaust prior to filing suit.

grievance officer determined that the mailroom had improperly withheld Gosier's clemency paperwork, citing his January 2019 grievance (*Id*. at p. 11). The grievance officer indicated that he advised "mailroom staff" that they are to deliver legal documents to the offender, whether the documents are sent by a family member or other outside source (*Id*.). The grievance officer affirmed the grievance and directed Gosier to have his sender resend the documents to the prison. Gosier argues that he did not need to exhaust his grievance further because he received a favorable outcome to his grievance.

      The PLRA requires that an inmate exhaust all available remedies, but the Seventh Circuit has stated that "all available" does not mean that an inmate "must appeal grievances that were resolved as he requested and where money damages were not available." *Thornton v. Snyder*, 428 F.3d 690, 695 (7th Cir. 2005). "Once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted." *Id*. at 695-96 (quoting *Ross v. County of Bernalilio*, 365 F.3d 1181, 1187 (10th Cir. 2004)). Here, Gosier received a favorable ruling from the prison. The grievance officer acknowledged that the legal paperwork was improperly confiscated by the mailroom staff, he indicated that he advised mailroom staff how to properly handle legal documents and directed Gosier to have his documents resubmitted (Doc. 70-2, p. 11). Although Gosier asked for immediate release from prison and two million dollars as his requested relief, the grievance officer noted that monetary compensation was unavailable. In Gosier's earlier grievance, the grievance officer noted that Gosier was not eligible for early release, and the grievance process does not offer such relief (Doc. 70-2, p. 19). *See* 20 Ill. Admin. Code §504.810(b) ("The grievance

procedure shall not be utilized for complaints regarding decisions…that are outside the authority of the Department, such as parole decisions, clemency or orders regarding length of sentence."). There was no other relief for Gosier to receive. Thus, he did not have to further appeal his grievance. That he ultimately chose to submit an appeal does not change the fact that he had already exhausted his available remedies with the favorable ruling at the institution. Appealing a grievance after receiving a favorable result "is not only counter-intuitive, but it is not required by the PLRA." *Thornton*, 428 F.3d at 697. Further, Gosier acknowledged in his appeal to the ARB that he received a favorable outcome but believed that the ARB could release him in light of the violation. Such relief was not available through the grievance process; thus, Gosier had exhausted his available remedies after the favorable ruling from the grievance office.

Defendants also argue that Gosier's grievance failed to identify them. But "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action." *Maddox,* 655 F.3d at 722. *See also See Riccardo v. Rausch,* 375 F.3d 521, 523–24 (7th Cir. 2004). Here, the fact that Gosier did not identify any individuals by name did not prevent the grievance officer from ruling on the merits of the grievance. The grievance officer was able to identify the mailroom staff at issue as the grievance response indicates he spoke with "mailroom staff' who indicated that they believed offenders could not receive duplicate copies and had to conduct legal research in the library (Doc. 70-2, p. 11). Further, the grievance officer ruled on the merits of the grievance and did not reject it on the grounds Gosier failed to identify any individual staff member.

Thus, the grievance served its purpose of exhausting Gosier's claims against Defendants.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment on the issue of administrative exhaustion (Docs. 69, 70) is **DENIED**. The stay on merits discovery is **LIFTED**; a discovery schedule will be entered by separate order.

**IT IS SO ORDERED.**

DATED:   August 7, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**