IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HARRY GOSIER,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SCOTT THOMPSON, SHAYNE MERCIER, KRISTI GEPPERT, and LOIS GREEN,<br><br>　　　　　Defendants. | Case No. 3:19-CV-01199-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  Plaintiff Harry Gosier, an inmate of Pinckneyville Correctional Center within the Illinois Department of Corrections ("IDOC"), initiated this action under 42 U.S.C. § 1983 on October 31, 2019. (Doc. 1). Gosier alleges that Defendants Scott Thompson, Shayne Mercier, Kristi Geppert, and Lois Green (collectively "Defendants") violated his First and Fourteenth Amendment rights to access the courts. (Docs. 1; 10). Gosier amended his complaint twice. (Docs. 34; 49). His second amended complaint clarifies that his access to courts claim against Defendants relates to the confiscation of his incoming mail containing his clemency paperwork. (Docs. 49; 59). After screening the second amended complaint, the Court allowed Gosier to proceed on one count under the First and Fourteenth Amendment against Defendants for interfering with Gosier's access to the courts after confiscating Gosier's clemency petition on two occasions. (Doc. 59). Originally, Gosier proceeded *pro se*, but the Court appointed counsel for Gosier in December 2022. (Docs. 74; 76).

  Now pending before the Court is a motion for summary judgment filed by Defendants

Thompson, Mercier, Geppert, and Green. (Docs. 115; 116). Defendants move for summary judgment arguing that Gosier lacks evidence that they violated his constitutional rights and asserting qualified immunity. (*Id.*). Gosier filed a response, to which Defendants filed a reply. (Docs. 126; 128; 133).

## FACTUAL BACKGROUND

In 2018, Gosier wished to petition the Illinois Governor for clemency and immediate release from prison after already serving 30 years on his life sentence. (Docs. 116-1, p. 9; 128). Prior to preparing a full clemency petition, Gosier also sent a letter to then-Governor Bruce Rauner in his effort to achieve an early release via executive clemency. (Doc. 116-1, pp. 5, 13-14). In the letter, Gosier attempted to paint the whole picture of his life, his potential before incarceration, his accountability, and his many years served for his offenses. (Docs. 116-1, pp. 6, 14; 128). In response, Gosier received a letter from the Prisoner Review Board ("PRB") dated September 20, 2018. (Docs. 116-7; 128-1). The letter outlined the next available Executive Clemency docket and listed the filing deadline as October 25, 2018, while warning that the filing procedures must be strictly followed for a petition to reach the Governor's attention. (*Id.*).[1]

On two occasions, Pinckneyville office assistants in the mailroom intercepted mail sent to Gosier by a person named Cassandra Ross. (Docs. 116-8; 116-10; 128-2; 128-7). The first occurred on November 16, 2018, by non-party Kimberly Litteken. (Docs. 116-6, pp. 5-6; 116-8; 128-2). The second occurred on March 7, 2019, by Defendant Lois Green. (Docs. 116-5, pp. 9-11;

---

[1] It appears from Gosier's grievances that he took this letter to mean that he would be going home once the required papers were signed and sent to the appropriate parties. (Docs. 116-9; 128-5). But that is inaccurate. (Doc. 116-3, pp. 10-11).

116-10; 128-7). In both instances, Gosier received a notice informing him that the mailroom confiscated paperwork because of unauthorized items. (Docs. 116-8; 116-10; 128-2; 128-7). Notably, Litteken and Green were supervised, but not trained, by office administrator Defendant Kristi Geppert. (Doc. 116-4, p. 5).

On November 16, 2018, Litteken completed a Notification of Unauthorized Items form. (Docs. 116-8; 128-2). She identified stamped envelopes in the mailing, which were not permitted due to drug and security concerns. (*Id.*; Docs. 116-4, p. 9; 116-6; 128-3). Moreover, Litteken cited another reason for confiscation as "legal paperwork/research to be done in library." (Docs. 116-8; 128-2). Evidently, Litteken believed that prisoners could not receive multiple copies of the same documents, and that legal research must be conducted in the law library, not sent via mail. (Docs. 116-6, pp. 5-6; 116-8; 128-2). The confiscated items were returned to the sender. (Docs. 116-6, pp. 6-7; 116-8; 128-2). While the paperwork completed by Litteken does not indicate the date the prison received the mail, she testified that the mailroom staff typically tried not to let mail sit for more than three days before getting it out to the recipients. (Doc. 116-6, p. 6).

Several months later, on March 7, 2019, Green also completed a Notification of Unauthorized Items as to Gosier's mail from Cassandra Ross. (Docs. 116-5, pp. 6-7; 116-10; 128-7). This time, the mail was flagged for including multiple copies of the same document, which Green believed to be impermissible. (Docs. 116-5, p. 10; 116-10; 128-7). Green indicated that one copy was delivered to Gosier, and the rest were held until Gosier paid for them to be returned to the sender. (*Id.*). If he did not do so, the copies would be destroyed. (Doc. 116-5, p. 10).

Gosier filed grievances as to both of these incidents. (Docs. 116-9; 116-11; 128-4; 128-5;

128-6; 128-8; 128-9). In January 2019, Gosier filed a grievance for the seizure in November 2018. (Docs. 116-9; 128-5). Gosier explained that he received legal mail[2] and that he planned to sign, notarize, and send the copies included in the mailing to a judge, State's Attorney, the Governor, and the PRB to successfully complete his clemency petition. (*Id.*). He acknowledged receiving a notice explaining that he could not receive the mail because the legal work had not been conducted in the library. (*Id.*). In the grievance, Gosier averred that he would have been released on January 10, 2019, had he received the documents and submitted them on time. (*Id.*). Ultimately, he claimed that failure to receive, sign, and submit those papers cost him his freedom. (Doc. 116-9).

The Pinckneyville warden and Chief Administrative Officer, Defendant Scott Thompson, designated the grievance as an "emergency" the following month. (Docs. 116-9; 128-5). Within two days, Defendant Shayne Mercier, a correctional counselor and grievance officer, reviewed the grievance. (Docs. 116-9; 128-6). Mercier ultimately concluded that she could not substantiate Gosier's claims because there was no record of a Notification of Unauthorized Items sent to Gosier as to his legal mail, the mailroom does not withhold legal mail, Gosier could not provide the names of officers or offenders to which he showed the form, and Gosier had no clemency pending. (*Id.*). Mercier recommended denying the January 2019 grievance, and Thompson concurred. (*Id.*). Gosier appealed the decision to the Administrative

---

[2] The Illinois Administrate Code defines "legal mail" as mail to and from registered attorneys who provide direct legal representation to offenders, state's attorneys, the Illinois Attorney General, judges or magistrates of any court or the Illinois Court of Claims judges, and any organization that provides direct legal representation to offenders, but not including organizations that provide referrals to attorneys, such as bar associations. (Doc. 116-13); ILL. ADMIN. CODE tit. 20, § 525.110 (2011). Though the mailings at issue contained legal documents, to the extent Gosier argues that Defendants interfered with his legal mail, he is incorrect. The mail intercepted was sent from Cassadra Ross, and there is no evidence that she fits into any of the categories within the legal mail definition.

Review Board ("ARB"). (Doc. 116-9). The ARB declined to address the appeal because Gosier failed to provide names of staff who informed him he was not allowed to receive legal mail or the date when he was told such information. (*Id.*).

In March 2019, Gosier filed a second grievance for the seizure of his mail. (Docs. 116-11; 128-8). This grievance addressed the confiscation of copies from one of his incoming mailings that same month. (*Id.*). This time, Green facilitated the confiscation. (*Id.*). Familiarly, Gosier explained that he was sent multiple copies of the same document to ensure he could provide a copy to the courts, State's Attorney office, the PRB, and the ARB for an ongoing legal matter. (Doc. 116-11*). Again, Gosier claimed that this legal matter would have set him free. (*Id.*). Within two months, Thompson designated this grievance an "emergency." (Docs. 116-11; 128-8). Chalene Hale, a non-party correctional counselor and grievance officer, reviewed the grievance. (Docs. 116-11; 116-12; 128-9). Hale emailed with the mailroom and library staff. (Doc. 116-12). The library staff confirmed that other inmates receive many documents containing legal research that were not generated in the library. (*Id.*). To their knowledge, there was no rule against receiving documents with legal research from outside sources, including family or friends, or multiple copies of documents. (*Id.*).

After her inquiry, Hale advised the mailroom staff that any "legal documents" being sent through the mail should be given to the offender whether sent by a family member or an outside source, and legal research need not be conducted at the facility but can be sent via mail. (Doc. 116-11). In addition, she directed the mailroom staff that duplicate copies of "legal documents" should not be confiscated. (*Id.*). In doing so, Hale recommended that the grievance be affirmed and suggested that Gosier should ask the sender to resend the documents. (*Id.*). Thompson concurred with Hale. (*Id.*). Gosier appealed the decision to the ARB, but no decision

was rendered at that level due to timing. (*Id.*).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). "A genuine dispute over a material fact exists if 'the evidence is such that a reasonable jury could return a verdict' for the nonmovant." *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it might affect the outcome of a suit under the relevant substantive law. *Ruffin-Thompkins*, 422 F.3d at 607.

The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160-61 (1970); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp.*, 477 U.S. at 322-24. A moving party is entitled to judgment as a matter of law where the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

## DISCUSSION

The First Amendment guarantees the right to redress the government, which includes

meaningful access to the courts. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009); *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). This right is, of course, extended to persons in prison. *Bridges*, 557 F.3d at 553. To honor this right, prison officials must provide prisoners with the necessary tools to attack their sentences and challenge the conditions of their confinement. *Id.*

To demonstrate that prison officials have violated this right, a prisoner must show deprivation of access to pursue legal claims and an actual resulting injury. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). In other words, to prevail in an access to the courts claim, a plaintiff must submit evidence showing that: (1) "he suffered actual injury—i.e., that prison officials interfered with his legal materials," and (2) "the interference actually prejudiced him in his pending litigation." *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (citing *Lewis v. Casey*, 518 U.S. 343, 348 (1996); *Lehn*, 364 F.3d at 868; and *Johnson v. Barczak*, 338 F.3d 771, 772 (7th Cir. 2003)). A plaintiff must submit evidence proving "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison condition." *Ortiz*, 561 F.3d at 671 (quoting *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006)); *see also Parker v. Evans*, 350 F. App'x 77, 79 (7th Cir. 2009) (no triable claim exists unless prisoner supplies evidence that "prison authorities prevented him from pursuing a nonfrivolous legal action").

Here, Gosier argues that Defendants denied him the opportunity to present his executive clemency petition due to their repeated interference with and seizure of his mail. (Doc. 126). But Defendants Scott Thompson, Shayne Mercier, and Kristi Geppert assert that Gosier's claims against them fail for lack of personal knowledge or involvement in interference with the mail. (Doc. 116). Thompson, as warden, reviewed Gosier's grievances

and expedited them as emergencies on both occasions underlying this action. Mercier investigated his first grievance and found it unsubstantiated. And Geppert supervised the mailroom staff but had no role in training either Green or Litteken or reviewing mail directly, including Gosier's mail. Gosier does not contest that he lacks evidence demonstrating that Thompson, Mercier, and Geppert were personally involved in the confiscation of his mail. (Doc. 126). He also agrees that summary judgment is proper as to these defendants. (*Id.*). As such, the Court grants summary judgment as to Thompson, Mercier, and Geppert. This leaves Green as the only remaining defendant.

Gosier's access to the courts claim rests on whether an interference with his legal materials actually prejudiced him in a pending litigation or nonfrivolous legal action. The PRB informed Gosier that he must submit his clemency petition in accordance with the filing procedures outlined in the official guidelines by October 25, 2018, to be considered on the next Executive Clemency docket in January 2019. Gosier argues that he missed this deadline because of the withholding of his mail, which interfered with his ability to apply for clemency. While there is no record of the date that Gosier's mail was received, Litteken testified that the mailroom typically processed mail within a few days of receipt to get the mail out to offenders. Litteken confiscated Gosier's mail on November 16, 2018. Even in light most favorable to Gosier, the submitted evidence suggests that Pinckneyville received the mail *after* the deadline to submit a clemency petition had passed. Thus, the November confiscation had no impact on his ability to submit his petition by the deadline, as it had already passed. At the very least, Gosier offers no evidence that the mail was received substantially earlier or before the deadline.

Regardless, Litteken, who is not a defendant in this action, handled Gosier's mail in

November 2018. Green, the remaining defendant, had no involvement in the withholding of Gosier's mail at that time—only in March 2019. So, the March 2019 confiscation is the only one relevant to this action. In that instance, Green partially confiscated Gosier's mail for containing multiple copies of the same document. She sent one copy to Gosier and held the other copies to be returned to the sender upon payment by the offender or to be destroyed if payment was not received. Gosier does not connect this confiscation to any pending litigation or deadline to complete a clemency petition—this mailing arrived months after the October 2018 deadline expired. Thus, such confiscation cannot be said to have prejudiced him in any legal matter or in relation to his clemency petition. Gosier has an ongoing ability to seek clemency. Green's confiscation of duplicates in his incoming mail in March 2019 did not impair that ability, and Gosier points to no missed deadline related to a clemency petition at that time. Moreover, prison officials must provide prisoners with the necessary tools to attack their sentences, and, here, Green provided Gosier with one copy of the document he claims he needed for his clemency petition. As such, Green is entitled to summary judgment on Gosier's access to the courts claim under the First and Fourteenth Amendments.

In Defendants' motion for summary judgment and Gosier's response, the parties also discuss a general First Amendment claim for interference with mail. "The First Amendment protects a prisoner's interest in his incoming and outgoing mail correspondence." *Felton v. Brown*, 129 F.4th 999, 1011 (7th Cir. 2025). The right in sending and receiving mail implicates a prisoner's right to free speech under the First Amendment. Prison officials are permitted to interfere with a prisoner's freedom of speech only if doing so is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Gosier argues that Green interfered with his mail by confiscating it for containing multiple copies, which was not

a policy of the prison and has no legitimate penological interest. In response, Green asserts qualified immunity because she believed that offenders could not receive duplicate copies at the time, and such right to have multiple copies was not clearly established in March 2018.

There is a fatal problem with Gosier's arguments—neither the operative second amended complaint nor the preceding complaints contain a claim for interference with his rights to free speech under the First Amendment. The only claim with which Gosier was allowed to proceed was an access to the courts claim. (*See* Doc. 59). In its screening order of the second amended complaint, the Court warned that "[a]ny other claim that [was] mentioned in the Second Amended Complaint but not addressed in [the] Order should be considered dismissed without prejudice as inadequately pled." (*Id.*). And new claims cannot be introduced at the summary judgment stage. *See Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997) (summary judgment stage was "too late in the day to be adding new claims"); *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 606 (7th Cir. 2000) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Gosier is limited to his access to the courts claim allowed by the Court after screening the second amended complaint, on which Defendants are entitled to summary judgment, as discussed above.

Even if the Court permitted Gosier to add this claim now, the Court agrees with Green that she is entitled to qualified immunity. "Qualified immunity shields government officials from liability under Section 1983 for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (internal quotation marks omitted). The doctrine allows public officials some "breathing room to make reasonable but mistaken judgments about open legal questions. When properly

applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted). In analyzing an assertion of qualified immunity, "courts consider whether the facts alleged demonstrate a constitutional violation, and whether the constitutional right was clearly established." *Estate of Escobedo*, 702 F.3d at 404 (citing *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)).

Gosier is correct that a prisoner's right to send and receive mail has been clearly established for decades. *See Thornburgh v. Abbott*, 490 U.S. 401, 407-14 (1989); *Turner*, 482 U.S. at 89. Gosier implores the Court to define the clearly established right in this case as the rule announced in *Turner*, that prison officials may only interfere with prisoners' freedom of speech if such interference is reasonably related to legitimate penological interests. (Doc. 126). But these rights cannot be defined at such a high level of generality, and the "clearly established" inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

Here, the specific context involves Green confiscating *duplicate copies* of documents sent to Gosier. Green believed that the prison had a policy against prisoners receiving duplicate copies, which it apparently did not. But Green sent one of the documents to Gosier and withheld only the duplicate copies. Gosier did receive one of the documents, including its message and content, that his friend outside of prison sent to him, just not all the duplicates. Considering this specific context, Gosier has failed to show that his right to multiple copies of documents contained in a mailing was clearly established at the time to defeat Green's claim of qualified immunity.

## CONCLUSION

For the reasons outlined above, the motion for summary judgment filed by Defendants Scott Thompson, Shayne Mercier, Kristi Geppert, and Lois Green (Doc. 115) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

DATED: August 4, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**